UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ALEXIS BROWN,<br>    *Plaintiff*, | )   3:18-CV-00577 (KAD)<br>)<br>) |
| v. | )<br>) |
| JEFFREY D. NEDDERMANN and<br>DAVID MOCARSKY,<br>    *Defendants*. | )<br>)<br>)   JANUARY 6, 2020 |

**MEMORANDUM OF DECISION**

Kari A. Dooley, United States District Judge

This action, brought pursuant to 42 U.S.C. § 1983, arises out of the arrest of plaintiff Alexis Brown ("Brown" or the "Plaintiff") on August 5, 2016 by defendants Jeffrey D. Neddermann and David Mocarsky (collectively, the "Defendants"), both law enforcement officers with the New Britain Police Department. The Plaintiff alleges that the Defendants violated her rights under the Fourth Amendment to the United States Constitution when they used excessive force when arresting her. Pending before the Court is the Defendants' motion for summary judgment. For the reasons set forth herein, the motion is DENIED.

**Facts[1]**

On August 5, 2016, Officer Jeffrey Neddermann of the New Britain Police Department was dispatched to 60 Roberts Street, New Britain, Connecticut, after the police department received a complaint from Beronica Fuente ("Fuente") regarding a landlord-tenant dispute. (Def.'s SMF at ¶ 1.) Fuente rented a third-floor apartment in a multi-family home at that address. (*Id.* at

---

[1] The relevant facts are taken from the Defendants' Local Rule 56(a)(1) Statement ("Def.'s SMF"); (ECF No. 25-2); and attached exhibits; (ECF No. 25-4–25-15); and the Plaintiff's Local Rule 56(a)(2) Statement ("Plf.'s SMF"); (ECF No. 28-1); and attached exhibits; (ECF No. 28-2–28-3). All of the facts set forth herein are undisputed unless otherwise indicated.

¶ 2.) The property is owned by Green Tree Holdings, LLC, and its sole owner, Brown, acts as landlord for the property. (*Id.* at ¶ 3.) Fuente explained that Brown had turned off the electricity to her apartment because Eversource, the electricity provider, started billing Fuente's electric service to Green Tree Holdings, LLC after Brown failed to remediate a wiring issue in a common area of the house. (*Id.* at ¶¶ 5–6.) Fuente could not turn the electricity back on because the breaker was in the basement, which Brown had locked. (*Id.* at ¶ 4.) Neddermann called Eversource, which confirmed that it was billing Green Tree Holdings, LLC for electric service to Fuente's apartment due to the unremediated wiring concern. (*Id.* at ¶¶ 8–9.)

After speaking with Eversource, Neddermann called Brown and instructed her to return to the property immediately to turn on Fuente's electricity. (*Id.* at ¶ 12.) During their exchange, Brown told Neddermann that he did not need to be there, that she was coming right back, and that he needed to "get off the property." (*Id.* at ¶¶ 14, 16.) At one point, Brown stated she was having lunch. (*Id.* at ¶ 18.) Brown told Neddermann that she "would finish up and come back," and she "yelled at [Officer Neddermann] to get off [the] property" and then "hung up the phone." (*Id.* at ¶ 19 (alterations in original).) After Brown ended the call, Neddermann called Sergeant David Mocarsky and informed him of the situation, and Mocarsky responded to the scene to provide assistance. (*Id.* at ¶ 20.)

At approximately 5:02 p.m., Brown arrived at 60 Roberts Street and parked her vehicle on the street in front of the house and in front of a police cruiser. (*Id.* at ¶ 26.) Although Neddermann and Mocarsky recall Brown slurring her words and smelling of alcohol while speaking to them outside the house, Brown denies that she was slurring her words or that she had alcohol on her breadth. (*Id.* at ¶¶ 28–29.) Brown accompanied the officers into the house. (*Id.* at ¶ 32.) Although

the officers and Fuente recall Brown being unsteady on her feet as she went into the basement, Brown denies being unsteady on her feet. (*Id.* at ¶¶ 33–34.)

Once Brown turned the electricity back on in Fuente's apartment, she returned to her vehicle. (*Id.* at ¶¶ 39–40.) As Brown walked toward her vehicle, Neddermann asked Brown to provide her identification. (*Id.* at ¶ 41.) Brown entered her vehicle and locked the doors. (*Id.* at ¶ 42.) The parties dispute what happened next, but video footage from the dashcam on the police cruiser parked behind Brown's vehicle shows Neddermann and Mocarsky approach the driver's side of Brown's vehicle. (Def.'s Ex. H at 5:53–6:10.) They spoke to her through her window and both repeatedly gestured with their hands for her to exit the vehicle, but she did not comply. (*Id.* at 6:05–6:47.) Brown denies that the officers told her to get out of the vehicle during this period but acknowledges that Neddermann told her "several times" to "stop playing games." (Def.'s SMF at ¶ 46.)

Mocarsky informed Brown through her closed driver's side window that he would break her passenger side window if she did not step out of the vehicle. (*Id.* at ¶ 49.) When Mocarsky started walking around the back of Brown's vehicle and toward the passenger's side, Brown unlocked her vehicle's door and Neddermann opened it. (*Id.* at ¶ 50; *see also* Def.'s Ex. H at 6:47.) Brown handed her identification to Neddermann who took it and then attempted to pull Brown from the vehicle. (Def.'s Ex. H at 6:45–6:55.) Brown resisted. (*Id.*) Mocarsky walked back to the driver's side of the vehicle and assisted Neddermann in his efforts to extricate Brown. (*Id.*) Brown claims that Neddermann "somehow bent [her] thumb back" when he grabbed hold of her left wrist, but Neddermann does not recall touching or bending Brown's thumb in any manner. (Def.'s SMF at ¶ 54.)

3

Once Brown was removed from the vehicle, Neddermann held her by the left arm while Mocarsky held her right wrist.[2] (*Id.* at ¶ 63.) Mocarsky attempted to place handcuffs on Brown. (*Id.*) The video footage shows Mocarsky struggling to place handcuffs on Brown's right wrist, but he was eventually able to handcuff both wrists behind her back. (Def.'s Ex. H at 7:05–7:20.) Mocarsky then took hold of the handcuffs and walked Brown to Neddermann's police cruiser so that Brown could be transported to the police department. (Def.'s SMF at ¶ 66.) While doing do, Mocarsky pulled the connecting chain of the handcuffs upward which, it appears from the video, caused Brown pain. (Def.'s Ex. H at 7:29–7:32.)

Brown arrived at the police department for booking at approximately 5:26 p.m. (Def.'s Ex. K at 7:00.) Brown was booked on two charges: interfering with an officer, in violation of Conn. Gen. Stat. § 53a-167a, and operating under the influence, in violation of Conn. Gen. Stat. § 14-227a.[3] (Def.'s SMF at ¶ 72.) While being processed, Brown refused to submit to a breathalyzer test.[4] (*See* Def.'s Ex. K at 11:15, 19:08–19:19.)

After the booking process was complete, Brown, at her request, was transported to the hospital where she reported an injury to her left wrist and left bicep. (Def.'s SMF at ¶ 73; Plf.'s SMF at ¶ 8; Plf.'s Ex. 1 at 9.) Brown further requested that a blood alcohol test be performed.

---

[2] The Plaintiff claims that the Defendants slammed her to the ground after removing her from the vehicle and struck her with a nightstick; (Plf.'s SMF at ¶ 3; Plf.'s Dep. at 123:4–7, Def.'s Ex. D, ECF No. 25-7; Hrg. Tr. at 31:7–9, Plf.'s Ex. 4, ECF No. 28-3); but that contention is contradicted by the video footage from her arrest; (Def.'s Ex. H at 6:50–7:33). However, while attempting to pull Brown from the vehicle, Mocarsky appears to strike down on Brown's right arm with his hand. (Def.'s Ex. H at 6:57–6:59.)

[3] Brown later resolved her criminal case by agreeing to plead guilty to violating Conn. Gen. Stat. § 19a-109, titled Heating and Provision of Utilities for Buildings, in exchange for entry of a *nolle prosequi* as to the charge of interfering with an officer and operating a vehicle under the influence. (Def.'s SMF at ¶ 76.)

[4] Brown contends that she did not refuse to take a breathalyzer test. Although Brown did not affirmatively state that she would not take a breathalyzer test, her conduct made clear that she was unwilling to do so.

4

(Plf.'s SMF at ¶ 9; Plf.'s Dep. at 200:4–7.) At 8:39 p.m. the test was administered and revealed that Brown had a blood ethanol level of 00.056 gm%.[5] (Def.'s SMF at ¶ 73.)

As a result of her handcuffing and arrest, Brown suffered bruising, pain in her wrists, and left upper arm pain. (Plf.'s SMF at ¶ 12; Plf.'s Ex. 1 at 8.) Brown testified at her deposition that any pain and bruising fully resolved within two to three weeks, except that she continues to have a "lingering" pain in her left thumb that is "very, very faint" and "dull." (Plf.'s Dep. at 186:4–5, 186:7, 199:20–200:3.)

**Standard of Review**

The standard under which the Court reviews motions for summary judgment is well-established. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law," while a dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Significantly, the inquiry being conducted by the court when reviewing of a motion for summary judgment focuses on "whether there is the need for a trial — whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250. As a result, the moving party satisfies his burden under Rule 56 "by showing . . . that there is an absence of evidence to support the nonmoving party's case" at trial. *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir.

---

[5] There are a number of disputes related to the use and admissibility of the blood alcohol test results as well as the Defendants' expert opinion as to the import of the results. Resolution of these evidentiary issues is unnecessary to the resolution of the motion for summary judgment.

5

2002) (per curiam) (internal quotation marks omitted). Once the movant meets his burden, the nonmoving party "must set forth 'specific facts' demonstrating that there is 'a genuine issue for trial.'" *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009) (quoting Fed. R. Civ. P. 56(e)). "[T]he party opposing summary judgment may not merely rest on the allegations or denials of his pleading" to establish the existence of a disputed fact. *Wright*, 554 F.3d at 266; *accord Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888 (1990). "[M]ere speculation or conjecture as to the true nature of the facts" will not suffice. *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (citations omitted; internal quotation marks omitted). Nor will wholly implausible claims or bald assertions that are unsupported by evidence. *See Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991); *Argus Inc. v. Eastman Kodak Co.*, 801 F.2d 38, 45 (2d Cir. 1986). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (citations omitted).

In determining whether there exists a genuine dispute as to a material fact, the Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian,* 680 F.3d 234, 236 (2d Cir. 2012) (quoting *Terry v. Ashcroft,* 336 F.3d 128, 137 (2d Cir. 2003)). "In deciding a motion for summary judgment, the district court's function is not to weigh the evidence or resolve issues of fact; it is confined to deciding whether a rational juror could find in favor of the non-moving party." *Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 254 (2d Cir. 2002).

**Discussion**

    **Excessive Force**

    The Plaintiff first asserts that the Defendants used excessive force in effectuating her arrest. On this claim, the Defendants argue that they are entitled to judgment as a matter of law because no reasonable jury could conclude that their conduct was unreasonable under the circumstances presented. The Defendants rely on the fact that they were confronted with a belligerent, intoxicated individual who was refusing their commands to exit her vehicle. Alternatively, the Defendants assert that an excessive force claim cannot be based on *de minimis* injuries such as those suffered by the Plaintiff. Finally, the Defendants argue that they are entitled to qualified immunity because their actions were objectively reasonable under the circumstances. The Plaintiff responds that summary judgment is inappropriate because there are many genuine disputes as to the material facts surrounding the Plaintiff's arrest, to include for example, whether she was, or appeared to be, intoxicated prior to her arrest. The Court agrees with the Plaintiff.

    A claim for excessive force that "arises in the context of an arrest or investigatory stop of a free citizen . . . is most properly characterized as one invoking the protections of the Fourth Amendment [to the United States Constitution]," as made applicable to states through the Fourteenth Amendment, and, therefore, is analyzed using a reasonableness standard. *Graham v. Connor*, 490 U.S. 386, 394 (1989). "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* at 396 (internal quotation marks omitted). The reasonableness inquiry is an "objective" one that asks, "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard

to their underlying intent or motivation." *Id.* at 397. "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396–97 (citation omitted; internal quotation marks omitted). Proper application of the reasonableness standard, therefore, "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396.

As to the Defendants' reliance upon qualified immunity, "[g]overnmental actors, including police officers, enjoy qualified immunity from suit for constitutional violations under 42 U.S.C. § 1983." *Myers v. Patterson*, 819 F.3d 625, 632 (2d Cir. 2016). When determining whether a government official is entitled to qualified immunity, the court must assess: "(1) whether plaintiff has shown facts making out violation of a constitutional right; (2) if so, whether that right was 'clearly established'; and (3) even if the right was 'clearly established,' whether it was 'objectively reasonable' for the [officials] to believe the conduct at issue was lawful." *Gonzalez v. City of Schenectady*, 728 F.3d 149, 154 (2d Cir. 2013). The Defendants focus solely on the third prong, objective reasonableness.

Both the Plaintiff's excessive force claim and the Defendants' qualified immunity defense turn on the highly fact specific analysis set forth above, to include, for example, an inquiry into whether the Defendants reasonably believed that the Plaintiff was intoxicated while at 60 Roberts Street. If the Plaintiff, in fact, appeared intoxicated, then the conduct of the Defendants when

extracting the Plaintiff from her vehicle and arresting her is more reasonable than if, in fact, she did not appear intoxicated. On this critical and material issue, a genuine factual dispute remains. Although the Defendants and Fuente maintain that the Plaintiff smelled of alcohol, was slurring her words and appeared unstable on her feet, the Plaintiff denies each of these allegations and maintains that she had only a single white sangria while at lunch. The dashcam video, which is without audio, does not reveal an obviously intoxicated person. Similarly, in the video footage of Brown's booking, whether Brown is unstable on her feet or slurring her words is by no means obvious one way or the other. In fact, the Plaintiff is heard speaking extensively during her booking and it will be for the jury to decide whether this footage supports the Defendants contention that the Plaintiff had slurred speech or appeared to be intoxicated. "Credibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment." *Fischl v. Armitage*, 128 F.3d 50, 55 (2d Cir. 1997); *accord Anderson*, 477 U.S. at 249 ("at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial").

The Defendants also contend that they are entitled to judgment as a matter of law because a plaintiff cannot state an excessive force claim based on *de minimis* injuries, such as those suffered by the Plaintiff. They are wrong. "While the main purpose of a § 1983 damages award is to compensate individuals for injuries caused by the deprivation of constitutional rights, a litigant is entitled to an award of nominal damages upon proof of a violation of a substantive constitutional right even in the absence of actual compensable injury." *Amato v. City of Saratoga Springs*, 170 F.3d 311, 317 (2d Cir. 1999). That a plaintiff suffered only *de minimis* injuries is certainly probative of whether the force used was excessive. *E.g.*, *Rincon v. City of New York*, No. 03-cv-

08276 (LAP), 2005 WL 646080, at *5 (S.D.N.Y. Mar. 21, 2005) (concluding defendants conduct when executing warrant was reasonable based on information that drugs and weapons were present in plaintiff's apartment and citing to plaintiff's *de minimis* injuries as further proof force used when restraining plaintiff was not excessive). But it is by no means dispositive. *Perkins v. Teele*, No. 3:15-cv-01137 (JCH), 2018 WL 3541864, at *3 (D. Conn. July 23, 2018); *Jackson on Behalf of Z.J. v. City of Middletown*, No. 3:11-cv-00725 (JAM), 2017 WL 2218304, at *3–*4 (D. Conn. May 19, 2017); *Sharnick v. D'Archangelo*, 935 F. Supp. 2d 436, 448 (D. Conn. 2013); *see also Huaman on behalf of J.M. v. Tinsley*, No. 3:13-cv-00484 (MPS), 2017 WL 4365155, at *14 (D. Conn. Sept. 28, 2017). It is well-established that a Plaintiff may recover, "even though the injury caused was not permanent or severe, where the force used was excessive." *Lemmo v. McKoy*, No. 08-cv-04264 (RJD), 2011 WL 843974, at *6 (E.D.N.Y. Mar. 8, 2011); *see also, Robison v. Via*, 821 F.2d 913, 923–24 (2d Cir. 1987) (holding that the plaintiff's testimony that an officer "'pushed' her against the inside of the door of her car, 'yanked' her out, 'threw [her] up against the fender,' and 'twisted [her] arm behind [her] back,' and that "she suffered bruises lasting a 'couple weeks'" was "sufficient to prevent the summary dismissal of a § 1983 claim for excessive force." [alterations in original]).

The Defendants motion for summary judgment as to the Plaintiff's excessive force claim is denied.

**Failure to Intervene**

The Plaintiff also asserts that the Defendants failed to intervene in the unconstitutional conduct of the other during her arrest. As to this claim, the Defendants argue that the Plaintiff cannot prevail because neither of them had a realistic opportunity to intervene nor would a reasonable person have believed a constitutional violation was occurring during the arrest.

Alternatively, the Defendants contend that they are entitled to qualified immunity as to any failure to intervene claim because their conduct was objectively reasonable. The Plaintiff responds that genuine issues of material fact also preclude summary judgment as to this claim. The Court agrees with the Plaintiff.

"A police officer is under a duty to intercede and prevent fellow officers from subjecting a citizen to excessive force, and may be held liable for his failure to do so if he observes the use of force and has sufficient time to act to prevent it. Liability attaches on the theory that the officer, by failing to intervene, becomes a 'tacit collaborator' in the illegality." *Figueroa v. Mazza*, 825 F.3d 89, 106 (2d Cir. 2016) (citation omitted). "An officer who fails to intercede is liable for the preventable harm caused by the actions of the other officers where that officer observes or has reason to know: (1) that excessive force is being used, (2) that a citizen has been unjustifiably arrested, or (3) that any constitutional violation has been committed by a law enforcement official. In order for liability to attach, there must have been a realistic opportunity to intervene to prevent the harm from occurring. Whether an officer had sufficient time to intercede or was capable of preventing the harm being caused by another officer is an issue of fact for the jury unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise." *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994) (citations omitted).

"To recover on [the] ground [of failure to intervene], of course, a plaintiff must still overcome the hurdle of qualified immunity." *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 129 (2d Cir. 1997). "A police officer cannot be held liable in damages for failure to intercede unless such failure permitted fellow officers to violate a suspect's clearly established statutory or constitutional rights of which a reasonable person would have known. Further, the failure to intercede must be under circumstances making it objectively unreasonable for him to believe that

11

his fellow officers' conduct did not violate those rights." *Id.* (citations omitted; internal quotation marks omitted).

This claim is derivative of and dependent upon the Plaintiff's excessive force claim, for which the Court has already identified at least one genuine material fact in dispute. If the jury concludes that one or both of the Defendants used excessive force during the Plaintiff's arrest, the jury would then need to determine whether either defendant could have intervened with respect to the other's unconstitutional conduct (whatever it is determined to be) and the remainder of the issues presented by this claim, to include the question of qualified immunity. The myriad of possible fact driven outcomes under the circumstances presented here renders summary judgment inappropriate as to this claim.

**Conclusion**

For the reasons set forth above, the Defendants' Motion for Summary Judgment [ECF No. 25] is DENIED.

**SO ORDERED** at Bridgeport, Connecticut, this 6th day of January 2020.

                                        */s/ Kari A. Dooley*
                                        KARI A. DOOLEY
                                        UNITED STATES DISTRICT JUDGE